# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 30, 2007**

Charles R. Fulbruge III
Clerk

No. 06-61063
Summary Calendar

KIMBERLY PARKS

Plaintiff - Appellant

v.

MISSISSIPPI DEPARTMENT OF TRANSPORTATION; MISSISSIPPI
TRANSPORTATION COMMISSION

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Mississippi
USDC 1:04-cv-00240-MPM

Before WIENER, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant Kimberly Parks appeals the district court's denial of her motion for judgment as a matter of law and new trial on four grounds: (1) The use of polygraph tests by Defendants-Appellees Mississippi Department of Transportation and Mississippi Transportation Commission ("Mississippi" or

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

"the State") violates Title VII's anti-retaliation provision;[1] (2) under Title VII, Mississippi should have "posted" (i.e., made obvious on or in intra-office materials) that polygraph tests would be required following the filing of a discrimination claim; (3) the district court erred in admitting testimony that the alleged sexual harasser had passed a polygraph examination; and (4) alternatively, the district court erred in its instructions to the jury on the use of the polygraph.

First, Parks insists that mandating polygraph examinations for employees who file sexual harassment claims is a per se violation of Title VII's anti-retaliation clause. This argument fails because Parks fundamentally mischaracterizes the facts of this case. Mississippi does not routinely require an employee who asserts such a claim to take a polygraph test, and Mississippi did not fire Parks for her refusal to take such a test in this instance. Parks's refusal was only the "last straw" in the State's sexual harassment investigation. As soon as Parks reported the alleged misconduct, Mississippi promptly transferred her out of the department supervised by her alleged sexual harasser and began what appears to have been a thorough, good faith investigation into her claim. As she and her accused told diametrically opposed stories, the State was faced with a stereotypical "he-says-she-says" swearing match, forcing the employer to do what it could to ferret out the truth. Only when investigators remained uncertain about the validity of Parks's allegations did Mississippi ask both Parks and the alleged harasser to submit to polygraph tests. The alleged harasser took the polygraph and passed, but Parks continually refused. This refusal and all previous information accumulated during the course of its

---

[1] The anti-retaliation provision of Title VII of the Civil Rights Act of 1964 provides that: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees...because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

investigation led Mississippi to conclude that Parks had lied. Mississippi fired Parks because it concluded that she had submitted a false sexual harassment claim, not because she refused to take a polygraph examination. Parks's refusal to submit to the polygraph was only one of several factors that led to the belief that she had submitted a false accusation; it was this belief that was the proximate cause of her termination.

Even if, arguendo, Mississippi had fired Parks solely because of her refusal to take the polygraph, making her refusal to take the polygraph the precipitating cause of her termination, her claim that mandating polygraph tests for employees who report sexual harassment are unlawful retaliation as a matter of law still would fail. A per se rule against polygraph exams in harassment disputes under Title VII would be overbroad. As this action illustrates, harassment disputes tend to be fact-intensive and case-specific. We agree with the district court that the question whether the use of polygraph tests is retaliatory is best left to a jury in each case. The per se rule that Parks seeks would be incompatible with the fact-sensitive nature of this and other harassment disputes.

Parks's second argument is also without merit. She does not provide any compelling precedent to indicate that Mississippi had a duty to disclose its polygraph examination "requirement." Although Parks's argument assumes that Mississippi had a polygraph examination "requirement," the evidence suggests the opposite, viz, that it was not Mississippi's standard operating procedure in sexual harassment investigations to require all involved parties to submit to polygraph exams. Mississippi asked Parks and the alleged sexual harasser to take polygraphs only during the final stages of an investigation that had, to date, yielded inconclusive results. Parks argues that Mississippi's level of disclosure did not meet Title VII's standard, which specifies that an employer "shall post and keep posted in conspicuous places upon its premises…information

pertinent to the filing of a complaint."[2] But Mississippi prominently displayed posters in Parks's office area outlining employee rights under Title VII and detailed the State's sexual harassment policy in its employee handbook, which Park possessed. The State's level of disclosure gave Parks notice of her rights and outlined the specifics of how she should file a claim. This disclosure satisfies Title VII's "information pertinent" standard. Although Parks insists that if she had known the State would request a polygraph examination, she would never have filed a sexual harassment claim, we believe that it is highly improbable that legitimate victims of sexual harassment would be deterred from filing a harassment claim simply because they might be asked to submit to a polygraph test.

Finally, Parks contends that the district court erred in admitting testimony that the alleged sexual harasser had passed the polygraph test or, alternatively, that the court erred in its jury instructions concerning the appropriate use of the polygraph. Regardless of whether Parks might be barred from raising these arguments because she did not present them in her motion for judgment as a matter of law and new trial, both of these arguments fail on the merits because Parks again mischaracterizes the facts. As discussed above, Mississippi did not terminate Parks simply for refusing to submit to a polygraph examination, vel non, but because her refusal to submit to a polygraph tipped the balance of the investigation against her, leading the State to conclude that her claim was false. Both Parks's objection to testimony that the alleged harasser passed a polygraph examination and Parks's proposed jury instructions concerning the reliability of polygraphs misconstrue the purpose of the polygraph evidence in this case. The reliability of polygraph examinations was not at issue in the trial. Mississippi did not offer the alleged harasser's

---

[2] 42 U.S.C. § 2000e-10(a).

polygraph examination for its truth or to prove that Parks lied about her claim. It did so to demonstrate that it had a reasonable, good faith belief that Parks had filed a false claim — that the State was justified in using Parks's refusal to submit to a polygraph, together with other evidence, to conclude that she had filed a false claim and therefore should be terminated.

The judgment of the district court is
AFFIRMED.